F I L E D
Clerk
District Court
SEP 19 2015
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>LEYDA I. ADA,<br><br>                    Defendant. | Case No. 1:12-cr-00030-02<br><br>**DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL** |

## I.    INTRODUCTION

Before a criminal defendant may avail herself of her right to a free court-appointed attorney, she must generally complete a financial affidavit—Form CJA 23—showing that she lacks the ability to pay. Leyda Ada was arrested in September 2012 and certified under penalty of perjury that she did not have "any cash on hand or money in savings or checking accounts." (Form CJA 23, ECF No. 157, Ex. A.) However, police searching Ada's home on the day of her arrest found $4,000 cash in her underwear drawer, and in the months leading up to her arrest, Ada had deposited two personal checks into a business checking account and used the same account for personal spending. A jury of Ada's peers found that her certification on CJA 23 was false and convicted her of perjury. (Verdict, ECF No. 150.)

Ada now asks the Court to set aside her conviction and enter a judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure. (Mot., ECF No. 157; Supp. Mot., ECF No. 165.) She argues that her conviction inappropriately rests on her response to a fundamentally ambiguous question, and that insufficient evidence supports the jury's verdict. (Mot. 5-8; Supp. Mot. 2-4.) The Government disagrees. (Opp'n, ECF No. 168.) She responded to the Government's

opposition. (Reply, ECF No. 170.) The Court heard arguments from the parties at a hearing on September 17, 2015. (Min. Entry, ECF No. 171.) For the reasons stated below, the Court will deny Ada's motion for judgment of acquittal.

## II. BACKGROUND

Ada was convicted for statements she made on September 25, 2012, the day she was arrested on charges of fraud and money laundering. Prior to her initial appearance in court, Ada was interviewed by Probation Officer Margarita Wonenberg, in part to determine Ada's financial situation for purposes of appointing counsel. (Opp'n Ex. A, ECF No. 168-1.) At trial, Wonenberg testified that she read the questions on CJA 23 to Ada and filled in Ada's corresponding answers. (Mot. 2.) Later, Ada was given an opportunity to review the form for errors and signed it. (Mot. 4.) Wonenberg also testified that she explained to Ada that "any cash on hand or money in savings or checking accounts" meant "cash anywhere available to you." (Opp'n Ex. A.)

When federal agents searched Ada's home on the day of her arrest, they discovered $4,000 cash in a drawer containing women's underwear. (Photographs, Opp'n Ex. C, ECF No. 168-3.) The Government also presented evidence that Ada was using the bank account of LKR Blaze 'N' Entertainment as her personal checking account. For instance, she deposited $5,000 into the account on July 27, 2012 (Opp'n Ex. D, ECF No. 168-4) and $2,500 on August 27, 2012 (Opp'n Ex. E, ECF No. 168-5), and wrote a check from that account to San Antonio Church dated July 20, 2012 (Opp'n Ex. G, ECF No. 168-7). Additionally, federal agents discovered a spiral-bound notebook in which Ada kept a checklist of personal items to sell, with a notation that the proceeds should in part be deposited into the "Blazen" account. (Opp'n Ex. F, ECF No. 168-6.)

## III. ANALYSIS

Ada argues that her conviction should be set aside for two reasons: (1) the phrase "cash on hand" is fundamentally ambiguous, and therefore cannot support a perjury conviction as a matter of law, and (2) there was insufficient evidence for a reasonable factfinder to find her guilty. The Court disagrees. In the context in which it was asked, the question containing "cash on hand" was not

2

fundamentally ambiguous, and the Government presented sufficient evidence from which a reasonable factfinder could find that Ada committed perjury beyond a reasonable doubt.

*a. Fundamental Ambiguity of "Cash on Hand"*

"Perjury requires that a witness believe that the testimony he gives is false." *United States v. Lighte*, 782 F.2d 367, 372 (9th Cir. 1986). For that reason, an excessively vague or fundamentally ambiguous question cannot support a conviction for perjury as a matter of law—no person could formulate a false belief about such a question. *See United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003). However, a phrase is only fundamentally ambiguous if, considered in its context, individuals of ordinary intelligence could not agree on its meaning. *See United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991); *United States v. Sainz*, 772 F.2d 559, 564-65 (9th Cir. 1985) (reversing a conviction for perjury where prosecution took defendant's statement out of context).

Ada attacks the phrase "cash on hand" as ambiguous for permitting several meanings: it could narrowly mean cash physically on a person, or broadly extend to cash a person might be eligible to borrow or even steal. (Supp. Mot. 2-3.) If persons of ordinary intelligence could not agree on the phrase's meaning, or if Ada did not believe that the question extended to cash at her home, then she could not have believed that her answer in the negative was false, and therefore could not have been properly convicted of perjury.

However, the phrase "cash on hand" in its proper context, "when viewed with anything but the partisan eye of an advocate," includes cash a defendant may have hidden in her home. *United States v. Bonacorsa*, 528 F.2d 1218, 1221 (2d Cir. 1976). Ada was not asked about her "cash on hand" in a vacuum; the question asked whether she had "any cash on hand *or money in savings or checking accounts*." (emphasis added). If the scope of "cash on hand" were limited to cash on Ada's person, then why would the question also ask about funds in bank accounts that could not possibly be on her person? Put differently, by what logic would the question exclude cash accessible to a defendant at her home when it specifically includes other sources of money not on the defendant's person? Ada offers no explanation, and the Court cannot conceive of one.

Ada's argument becomes even less tenable in the greater context of CJA 23. As a document designed to gauge whether an individual can pay for her own legal defense, CJA 23 casts a wide net to over a defendant's finances, requiring information about all sources of her income, assets, and expenses. Income is not limited to employment; it also includes "any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources." (CJA 23) Similarly, property includes "any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)." (*Id.*) In other words, because no source of income or type of asset is excluded from CJA 23, no one of ordinary intellect could conclude that the cash she had hidden at her home was exempt from reporting.

Ada also contends that Wonenberg's description of "cash on hand" as "cash anywhere available to you" created fundamental ambiguity. (Mot. 7.) As counsel explained during the September 17, 2015 hearing, in its broadest sense, "cash on hand" could mean cash that a defendant could or should steal. The argument is absurd, but it highlights Ada's misunderstanding of how ambiguity works to negate perjury. Because perjury requires that a defendant believe her statement is false, an ambiguous question cannot support a conviction if the defendant understands the question to mean something the questioner does not, and truly answers under the defendant's understanding. *Lighte*, 782 F.2d at 372. For instance, when a term has two distinct meanings, and context does not make clear which meaning is used in the question, a conviction for perjury will not stand if the defendant's answer could have been true based on one of the meanings. *Cf. Sainz*, 772 F.2d at 563 (noting the two ways in which "procedure" was used at defendant's testimony before the grand jury, and that the defendant could have answered truly with either a yes or a no depending on which meaning was intended by the prosecutor). That is not the case here, because the ambiguity Ada alleges only expands the possible scope of the term; it does not create a distinct meaning. In other words, Ada could not have truthfully answered that she did not have cash on hand under any definition of the phrase that included the cash she kept hidden at her home. Her attempt to show that cash on hand could also include increasingly

4

tangential sources of cash apart from what she kept at home does not render her answer any less untrue. Rather, for Ada to escape through ambiguity, she would have to show that cash on hand meant cash on the person, which the Court has already found to be illogical.

### b. Sufficiency of the Evidence

Absent excessive vagueness or fundamental ambiguity, "the meaning and truthfulness of [a defendant's] answer [is] for the jury." *Bonacorsa*, 528 F.2d at 1221. A court will not disturb the jury's decision unless, viewing the evidence in a light most favorable to the prosecution, there was insufficient evidence for any reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Here, the Government presented sufficient evidence that a reasonable trier of fact could find Ada guilty of perjury beyond a reasonable doubt. First, the Government presented evidence that Ada knew she had "cash on hand" in the form of $4,000 discovered in an underwear drawer at her home. (Photos., Opp'n Ex. C.) Ada argues that the Government failed to show that the cash found in the underwear drawer (or the underwear) belonged to her (Reply 6, ECF No. 170), but the photographs seem to show women's underwear, and the jury could have rationally concluded that the cash and underwear belonged to Ada. Accordingly, when Ada answered that she did not have any cash on hand, the jury could have determined that she perjured herself.

Additionally, the Government presented evidence to show that Ada had "money in savings or checking accounts." The Government admitted two checks, one for $5,000 and another for $2,500, written out to Ada from her mother that were deposited into a Blaze 'N' Entertainment checking account less than two months prior to her arrest. (Opp'n Exs. D & E.) It also admitted a notebook found during the search of Ada's home that contained a notation that proceeds from the sale of her personal property would be deposited into the "Blazen" account. (Opp'n Ex. F.) Finally, the Government admitted a check that Ada had written from the Blaze 'N' Entertainment checking account to San Antonio Church, which a rationale juror could use to infer that Ada considered the money in the account hers to spend. (Opp'n Ex. G.)

5

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of perjury—here that Ada believed her sworn statement was false—beyond a reasonable doubt. The cash in the underwear drawer could have been hers, and her treatment of the Blaze 'N' Entertainment account as a personal account both suggest that she lied on CJA Form 23.

## IV.  CONCLUSION

Whatever the outer limits of CJA 23's "cash on hand" may be, they include the cash a defendant keeps in her underwear drawer. Here, the jury had sufficient evidence to reasonably conclude that Ada knew she had the cash in both the underwear drawer and money in the Blaze 'N' Entertainment checking account, and that she accordingly committed perjury beyond a reasonable doubt when she answered that she did not. The motion for judgment of acquittal is denied.

SO ORDERED this 18th day of September, 2015.

RAMONA V. MANGLONA
Chief Judge